NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATURE'S BENEFIT, INC., | |
| Plaintiff, | CIVIL NO. 06-4836 (GEB) |
| v. | |
| NFI and LARRY CHRISCOE, | MEMORANDUM OPINION |
| Defendants. | |

**BROWN, Chief District Judge**

This matter comes before the Court upon Defendants NFI and Larry Chriscoe (hereinafter "Defendants") motion to dismiss, transfer or stay the instant civil action pursuant to the "first to file rule" and alternatively, to dismiss Plaintiff's Nature's Benefit, Inc. (hereinafter "Plaintiff") Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) [Docket Entry # 5]. The action has been reassigned to the undersigned on June 12, 2007.  On July 9, 2007, the Court conducted a telephonic conference call and instructed the parties to submit supplemental briefs on the issue of personal jurisdiction.  On July 19, 2007, Defendants filed their supplemental brief.  Plaintiff chose to rest on the papers it previously submitted.  The Court has read and fully considered all of the parties' submissions.  For the reasons discussed below, Defendants' motion to transfer this case to North Carolina based upon the first to file rule is granted.

I.  BACKGROUND

  A.  **The North Carolina Complaint**

On May 4, 2006, HBC Ventures, LLC (hereinafter "HBC") filed a civil Complaint

against Holt MD Consulting, Inc., and Stephen Holt, MD (hereinafter "Holt") in United States District Court for the Eastern District of North Carolina (hereinafter "North Carolina Complaint").

The North Carolina Complaint alleged breach of contract (Count One); breach of express and implied warranties (Count Two); fraud (Count Three); tortious interference (Count Four); unfair trade practices (Count Five); and sought declaratory judgment (Count Six).

Specifically, the North Carolina Complaint alleges that in or about 2001, Holt Consulting "and one of its affiliates" entered into a license agreement with Robert Barefoot, the author of a book about coral calcium. In the license agreement, Holt Consulting was granted exclusive rights to market, use, and sell the Barefoot book and associated products. (North Carolina Compl., p. 2). The license agreement also provided that Holt Consulting could sublicense all of its rights under the license agreement. (*Id.*).

The North Carolina Complaint also alleges that on March 1, 2003, Holt Consulting granted to HBC an exclusive sublicense to "market, advertise, promote, distribute, and sell" the Barefoot book and the dietary coral calcium products which bore his name and image through mass market retail in the United States and Canada. (*Id.*). The sublicense agreement allegedly contained a provision that which provided that the initial three year term of said agreement was to renew automatically for additional terms of one year if, six months prior to the end of the initial term or renewal term, HBC was selling the Barefoot Book or coral calcium supplements to at least five of the ten largest accounts in the retail mass market. (*Id.* at p. 3).

The North Carolina Complaint further alleges that during the six months prior to March 1, 2006, HBC continued to market and sell coral calcium to at least five of the ten largest retail

mass market accounts, in accordance with the sublicense agreement. (*Id.*). However, the Complaint alleges that in or about March, 2006, Holt Consulting notified HBC that it was terminating the sublicense agreement and demanded that HBC cease ordering and repackaging the coral calcium products. The North Carolina Complaint further alleges that Holt Consulting informed HBC that it was going to "transition" coral calcium sales to Natures Benefit, Inc. and away from HBC. (*Id.*).

The North Carolina Complaint alleges that after the sublicense agreement was terminated by Holt Consulting, HBC conducted an investigation to find the motivation for said termination. It further alleges that, based on that investigation, HBC discovered that the license agreement, and all rights sublicensed to HBC in the sublicense agreement, had been terminated "a number of years ago . . .[c]onsequently, for several years HBC has paid Holt Consulting royalties to which it was not entitled under the sublicense agreement." (*Id.* at p. 4).

The North Carolina Complaint states that in May, 2006, HBC entered into a new agreement "with a company authorized by Barefoot" to continue to market, advertise and promote coral calcium products. (*Id.* at p. 5). However, it appears, according to the North Carolina Complaint, that "Defendants take the position that HBC and its affiliates are not and could not be authorized under any circumstances to market, advertise, promote, distribute, have manufactured or sell any Barefoot coral calcium products." (*Id.*).

On June 28, 2006, after the North Carolina Complaint was filed by HBC and summons were issued, Holt Consulting filed a motion to dismiss for lack of jurisdiction and/or improper venue. (North Carolina Docket, Entry # 8). On May 31, 2007, the Eastern District of North Carolina issued an order holding that it had personal jurisdiction over the breach of contract

(Count One); the breach of express and implied warranties claim (Count Two); the fraud claim (Count Three); the unfair trade practices claim (Count Five); and the request for declaratory judgment. The Eastern District of North Carolina expressed reservations over its jurisdiction for Count Four, which alleged tortious interference and any claims against Stephen Holt. In response to those reservations, HBC Ventures, LLC filed an Amended Complaint, omitting those claims. (Defendants' July 2, 2007 Supplemental Memorandum, p. 2, Exh. A and B).

      **B.**      **The New Jersey Complaint**

On August 30, 2006, Plaintiff Nature's Benefit, Inc. filed a five count Complaint in New Jersey Superior Court, Law Division, Essex County. On October 10, 2006, Defendants removed the Complaint to this Court. (Docket Entry # 1).

Count One of the New Jersey Complaint alleges fraud; Count Two alleges unfair competition; Count Three alleges trademark infringement; Count Four alleges conspiracy; and Count Five alleges the tort of outrage. (Compl.).

Specifically, the New Jersey Complaint alleges that in late 2002 and early 2003, Defendant NFI and Larry Chriscoe, NFI's chief operating officer, approached Plaintiff Nature's Benefit, Inc., to enter into a deal in which Defendants would market nutritive supplements and books for Plaintiff and its subsidiary, Wellness Publishing, to retail mass market accounts. (Compl., pp. 1-2).

The New Jersey Complaint further alleges that "Defendant NFI set up what now appears to be a shell corporation, known as HSB Ventures, to gain control of the retail mass market for Barefoot Coral Calcium Plus, a product owned and licensed by plaintiff, Nature's Benefit." (*Id.* at p. 2).

Thereafter, the New Jersey Complaint alleges, Defendants contacted Robert Barefoot and paid him for the rights to Barefoot Coral Calcium, which is "confusingly similar" in name and trade dress to the product Plaintiff had sold and marketed, and which Plaintiff allegedly has "rights to." (*Id.* at pp. 2, 3).

## II.    DEFENDANTS' MOTION

Defendants assert several alternate grounds for dismissal or transfer. First, Defendants argue that the instant civil action is a "mirror image" of the North Carolina action filed prior to the instant action. As such, Defendants argue, the instant action should be dismissed, stayed or transferred pursuant to the "first to file" rule. Alternatively, Defendants argue that the instant action should be dismissed under F.R.Civ.P. 12(b)(6) and 9(b).

Plaintiff opposes Defendants' motion and argues that circumstances negate the implementation of the first to file rule. Plaintiff argues that Defendants have attempted to "mislead the court, circumvent the rules of jurisdiction, and forum-shop" by designating the wrong parties and by filing an unripe declaratory judgment claim in North Carolina. Plaintiff further argues that the instant action has progressed more rapidly than the North Carolina action, thus presenting another circumstance that should preclude this Court from implementing the first to file rule.

## III.    DISCUSSION

The first to file rule encourages "sound judicial administration and promotes comity among federal courts of equal rank," by directing courts to transfer, stay or dismiss an action when a "similar" complaint has already been filed in another federal court. *EEOC v. University of Pennsylvania*, 850 F.2d 969, 971, 977 (3d Cir. 1988) (also holding that "in all cases of

concurrent jurisdiction, the court which first has possession of the subject must decide it"); *see also Walden v. Washington Square Securities, Inc.*, 2004 WL 758272 (W.D.Pa. 2004). Neither identical parties nor identical issues are needed, only a "substantial overlap." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). The first to file rule was adopted by the Third Circuit in *Kerotest Manufacturing Co. v. C-O Two Fire Equipment Co.*, 189 F.2d 31 (3d Cir. 1951), *aff'd*, 342 U.S. 180 (1952).

When a motion to dismiss under the first filed rule is made, a court must take into account the same factors as those used in a Title 28, United States Code, Section 1404(a) transfer motion. *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F.Supp. 1144, 1153 (S.D.N.Y. 1995). If the factors balance in favor of the first to file rule, then a court may properly dismiss, stay or transfer the second-filed action to avoid duplicative litigation under its "inherent power." *Trippe Mfg. Co. v. American Power Conservation Corp.*, 46 F.3d 624, 629 (7th Cir. 1995), *quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 183 (1952) ("[a] district court has 'an ample degree of discretion' in deferring to another federal proceeding involving the same parties and issues to avoid duplicative litigation.").

However, if the first-filed action is vulnerable to dismissal on jurisdictional grounds, the court in the second-filed action should stay or transfer said action rather than dismiss it outright. *See Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991); *GT Plus, Ltd. v. Ja-Ru Inc.*, 41 F.Supp. 2d 421, 424 (S.D.N.Y. 1998); 17 *Moore's Federal Practice*, § 111.13(1)(o)(ii)(A)-(C).

Additionally, there are a number of circumstances that a court could find that would allow it to depart from the first to file rule. Those circumstances include bad faith on the part of the

party who filed first, forum-shopping, inequitable conduct and in circumstances where the second filed action is more fully developed than the first. *One World Botanicals, Ltd. v. Gulf Coast Nutritionals, Inc.*, 987 F.Supp. 317, 328 (D.N.J. 1997).

Title 28, United States Code, Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

There are three factors for a court's consideration which are set forth within the statute. Those factors are: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. 28 U.S.C. § 1404(a); *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995). These factors, the Third Circuit has opined, are merely a starting point and that Court has articulated additional factors that courts should consider when deciding whether to transfer an action, dividing said additional factors into categories of private and public interests. See *Jumara*, 55 F.3d at 879. Private interests include: (1) the "plaintiff's forum preference as manifested in the original choice," (2) the "defendant's preference," (3) "whether the claim arose elsewhere," (4) "the convenience of the parties as indicated by their relative physical and financial condition," (5) "the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* at 879 (citations omitted).

The public interests include: (1) "the enforceability of the judgment," (2) "practical considerations that could make the trial easy, expeditious, or inexpensive," (3) "the relative administrative difficulty in the two fora resulting from court congestion," (4) "the local interest in

deciding local controversies at home," (5) "the public polices of the fora," and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

     A.    <u>**Are the Complaints Substantially Similar**</u>?

In the North Carolina Complaint, Plaintiff HBC sues the Holt Defendants for breach of contract, breach of express and implied warranties, fraud, tortious interference, unfair trade practices and seeks declaratory judgment. In the New Jersey Complaint, Plaintiff Nature's Benefit, Inc. sues Defendants NFI and Larry Chriscoe for fraud, unfair competition, trademark infringement, conspiracy and the tort of outrage. At the outset, both complaints focus and center upon the rights to market Robert Barefoot's coral calcium products, and both make claims for fraud and tortious conduct, among others.

Looking more closely at the parties of each complaint, further substantial similarities are found. Specifically, the Court notes that HBC, plaintiff in the North Carolina Complaint, is a subsidiary of NFI, one of the named defendants in the New Jersey Complaint. Larry Chriscoe, HBC's operating officer, is also a defendant in the New Jersey Complaint. (Plt. Opp., p. 1; New Jersey Complaint, p. 1). HBC is also owned, in part, by Defendant Larry Chriscoe. (North Carolina Compl., p. 1). Further, Holt MD Consulting, Inc., a defendant in the North Carolina Complaint, is an affiliate of New Jersey Complaint Plaintiff Nature's Benefit Inc. Finally, Holt MD, a defendant in the North Carolina action, and Nature's Benefit, Inc., the plaintiff of the New Jersey action, are both owned by Dr. Stephen Holt, another named defendant in the North Carolina action. (Def. Brief, p. 2).

As the instant motion is a motion to dismiss, and not for summary judgment, the Court is confined to the brief and undetailed allegations of the New Jersey Complaint, and to the extent

that it is implicated, the North Carolina Complaint. However, based upon the similarity of the centralized issue, as well as the closely intertwined parties, the Court concludes that the complaints have a "substantial overlap" of parties and issues to establish *prima facie* support for implementation of the first to file rule.

  **B.** **Was the North Carolina Action Filed First?**

The next step in the first to file analysis is to determine whether the North Carolina action or the New Jersey action was filed first. As previously discussed, the North Carolina Complaint was filed on May 4, 2006. The New Jersey Complaint was filed on August 30, 2006. Approximately four months separate the filings. Therefore, the North Carolina Action was clearly filed first.

  **C.** **Is the Jurisdiction Concurrent?**

The next issue this Court must consider is whether there is "concurrent jurisdiction." Plaintiff asserts both a lack of subject matter and personal jurisdiction. First, Plaintiff asserts that the North Carolina action is a declaratory judgment action "in the form of a breach of contract complaint." Second, Plaintiff asserts that North Carolina lacks personal jurisdiction.

   **i.** **subject matter jurisdiction**

Although Plaintiff argues that the North Carolina action is a declaratory judgment action, the Court notes that the North Carolina Complaint asserts several causes of action before it seeks declaratory judgment. Those causes of action are independent of the declaratory judgment count, and consist of claims of fraud, breach of contract, breach of warranties, tortious interference and unfair trade practices. Additionally, there has been no challenge to subject matter jurisdiction in the North Carolina action, and it appears that the parties are diverse, and the amount in

controversy has properly been alleged to be above $75,000. Joining the parties in the New Jersey action would not destroy diversity. Therefore, the Court concludes that Plaintiff's argument regarding subject matter jurisdiction is without merit.

### ii. personal jurisdiction

Here, Plaintiff alleges that there is no personal jurisdiction over Nature's Benefit in North Carolina. In consideration of the personal jurisdiction issue, the Court asked the parties to submit supplemental briefing. On July 19, 2007, Defendants filed a Supplemental Memorandum of Law [Second] in Support of Motion to Transfer Concerning the Eastern District of North Carolina's Personal Jurisdiction over Plaintiff.

Defendants, in support of their assertion that personal jurisdiction over Plaintiff exists in North Carolina, have taken several steps. Most significantly, Defendants sent two members of their law firm staff on two separate occasions to two separate locations in North Carolina to purchase the Nature's Benefit Barefoot Coral Calcium.

The first location of purchase was a Vitamin Shoppe retail outlet in Winston-Salem, North Carolina. The staff member successfully located and purchased the product in question, providing photographs and a receipt as proof of purchase and location. The staff member also photographed an advertisement located in the window of the Vitamin Shoppe as well as an advertisement visible in the front window of the store.

The second location of purchase was a Vitamin Shoppe retail outlet in Raleigh, North Carolina. The second staff member also successfully located and purchased the product in question, providing photographs and a receipt as proof of purchase and location. (Def. Second Supplemental Brief, pp. 8-10).

In further support of personal jurisdiction, Defendants also provide the list of eleven websites which directly market Nature's Benefit's products. (*Id.* at 10). Additionally, Defendants assert that Plaintiff maintains business relationships with "numerous" companies doing business on Plaintiff's behalf in North Carolina, including a marketing firm based in Cary, North Carolina. (*Id.*).

As the parties are aware, Rule 4(e) of the Federal Rules of Civil Procedure empowers a court to exercise personal jurisdiction over a non-resident defendant to the extent authorized by the law of the state in which that court sits. Fed. R. Civ. P. 4(e); *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir. 1990); *Romero v. Aerolineas Argentinas*, 834 F. Supp. 673, 678 (D.N.J. 1993). New Jersey and North Carolina's long-arm statutes permit the exercise of *in personam* jurisdiction as far as is constitutionally permissible under the Due Process Clause of the Fourteenth Amendment. *See* N.J. Ct. R. 4:4-4; *Carteret Savings Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir.1992); *Romero* at 678; *Hardee's Food Systems, Inc. v. Beardmore*, 169 F.R.D. 311, 313-324 (E.D.N.C. 1996). Therefore, the question as to whether the Eastern District of North Carolina has jurisdiction over Plaintiff shall be determined in accordance with federal constitutional law. *Decker v. Circus Circus Hotel*, 49 F. Supp.2d 743, 745 (D.N.J. 1999) (citing *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 698 (3d Cir. 1990)).[1]

The Supreme Court has delineated two categories of *in personam* jurisdiction, general or specific, under which a court may exercise jurisdiction over an absent defendant. *See Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 699 (3d Cir. 1990) (citation omitted). Each will be considered in

---

[1] Plaintiff does not dispute North Carolina's ability to assert personal jurisdiction over Defendants, nor can it, as Defendants' corporate headquarters are located in the Eastern District of North Carolina. (Def. Second Suppl. Brief, p. 11).

turn.

### a.     general jurisdiction

If a party is subject to the general jurisdiction of a state, he or she can be called to answer any claim against him or her, regardless of whether the subject matter of the cause of action has any connection to the forum.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984); *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992).  To establish general jurisdiction, Defendants must demonstrate that Plaintiff has systematic and continuous contacts with the forum state.  *Helicopteros* at 414, n.9; *International Shoe* at 320.

Here, Defendants have demonstrated that Plaintiff markets and sells its products throughout North Carolina through retail outlets, including the Vitamin Shoppe stores.  Further, Defendants have shown that Plaintiff also markets to customers in North Carolina, as well as other states, through the use of the world wide web.

In consideration of web marketing and sales, the Third Circuit held that "the mere operation of a commercially interactive website should not subject the operator to jurisdiction anywhere in the world."  *Toys 'R' Us v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003).  Instead, there must be additional evidence of purposeful availment through targeting of a website to the state, interacting with residents of the forum state via the website, or through other contacts.  *Dluhos v. Strasberg*, 2005 WL 1683732 at * 6 (D.N.J. 2005).

Here, Plaintiff does affirmatively conduct business in North Carolina.  This is evident by the selling of products in retail outlets operating in North Carolina, as well as doing business with other business entities located within North Carolina's borders.  Therefore, Plaintiff's use of

the world wide web provides additional support for the establishment of personal jurisdiction in North Carolina.

As such, the Court finds that Defendants have shown systematic and continuous contacts by Plaintiff with North Carolina. Therefore, general jurisdiction has been satisfactorily demonstrated.

### b. specific jurisdiction

In the absence of general jurisdiction, a court can assert specific jurisdiction over a party where said party purposely directs its activities at residents of the forum state, and the litigation results from alleged injuries arising from those specific in-state activities. *Burger King* at 472 (citing *Helicopteros Nationales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Additionally, due process requirements are satisfied only where a party has "'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Helicopteros* at 414 (quoting *International Shoe* at 316). This principle has given rise to a two-prong test: first, the party must have had constitutionally sufficient "minimum contacts" with the forum, and second, if minimum contacts are shown, jurisdiction may be found where the court determines, in its discretion, that to do so would comport with "traditional notions of fair play and substantial justice." *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods.*, 75 F.3d 147, 150-51 (3d Cir. 1996). In consideration of the foregoing, even if Plaintiff was not subject to the general jurisdiction of North Carolina, Plaintiff would nevertheless be subject to the personal jurisdiction of North Carolina through specific jurisdiction.

### i.     *minimum contacts*

Minimum contacts are considered the "constitutional touchstone" for determining whether the exercise of personal jurisdiction comports with due process. *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County*, 480 U.S. 102, 108-09 (1987); *Burger King* at 474. Minimum contacts exist if the party "'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Asahi* at 109 (quoting *Burger King* at 474). In other words, a party's conduct and its connection with North Carolina must be such that the party "should reasonably anticipate being haled into court[] here." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Vetrotex* at 151.

The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contacts with the forum state. *Hanson v. Denckla*, 357 U.S. 235, 253 (1957). Conversely, where the party "deliberately" engages in significant activities within a state or creates "continuing obligations" between him or herself and residents of the forum, minimum contacts will be found to exist. *Burger King* at 476.

Here, as previously discussed, Plaintiff markets and sells its products in North Carolina. Plaintiff has also entered into business with North Carolina business entities. Finally, Plaintiff markets and sells its products via the world wide web. These activities provides the basis for the minimum contacts necessary to establish personal jurisdiction.

### ii.     *fair play and substantial justice*

Once a party has made out a *prima facie* case of minimum contacts, the opposing party must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King* at 477. In determining whether the assertion of

jurisdiction violates traditional notions of fair play and substantial justice, the court must consider several factors: the burden on the opposing party, the interests of the forum state, the moving party's interest in obtaining relief, the interstate judicial system's interest in obtaining efficient resolution of controversies, and, if relevant, the shared interest of the several states in furthering substantive social policies. *Asahi* at 113.  A finding that jurisdiction would be unreasonable under traditional notions of fair play and substantial justice, despite a finding of minimum contacts, would ultimately invalidate any jurisdictional hold a forum state may otherwise maintain. *D'Almeida v. Stork Brabant B.V.*, 71 F.3d 50 (1st Cir. 1995).  The Court finds that these factors weigh heavily in favor of exercising jurisdiction.

Specifically, and in contemplation of the *Asahi* factors, the Court concludes that because Plaintiff has engaged in systematic and continuous activities with North Carolina, and because a substantially similar civil suit is currently underway in North Carolina, the exercise of personal jurisdiction would not violate the traditional notions of fair play and substantial justice.

### D.     1404(a) Factors

This Court has carefully considered all of the factors set forth by the courts in contemplation of whether or not to transfer the instant civil action to the Eastern District of North Carolina.  Although Plaintiff has expressed its discontent at the transfer, and although the District of New Jersey is Plaintiff's original forum choice, the other factors weigh in favor of transfer.

Specifically, there is a substantially similar litigation involving all the parties in the instant action currently underway in North Carolina.  Therefore, any evidence or witnesses that may be needed here would likewise be needed there.

Further, judicial economy, as well as financial economy, which are the underpinnings of the first to file rule, are better served by transferring the civil action at bar to North Carolina.

Therefore, the Court concludes that § 1404(a) factors balance in favor of transfer to the Eastern District of North Carolina.

### IV.     CONCLUSION

The North Carolina action is substantially similar to the New Jersey action.  Further, the North Carolina Complaint was filed four months prior to the New Jersey Complaint.  Additionally, North Carolina maintains concurrent jurisdiction over the parties.  Finally, the § 1404(a) factors answer in favor of transfer.  For the foregoing reasons, Defendants' Motion to Dismiss, Transfer or Stay the instant action pursuant to the first to file rule is granted.

s/Garrett E. Brown, Jr.
**HONORABLE GARRETT E. BROWN, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**

Dated: August   27, 2007